371 So.2d 120 (1978)
George Lynn KING, Appellant,
v.
STATE of Florida, Appellee.
Larry Frank MORRIS, Appellant,
v.
State of Florida, Appellee.
Nos. HH-280, HH-296.
District Court of Appeal of Florida, First District.
December 1, 1978.
*121 Larry G. Turner, Gainesville, for appellant (HH-280), Daniel T. O'Connell of O'Connell & Hulslander, Gainesville, for appellant (HH-296).
Robert L. Shevin, Atty. Gen. and Wallace E. Allbritton, Asst. Atty. Gen. (HH-280 and HH-296), for appellee.
ERVIN, Judge.
King and Morris appeal their convictions for the offense of delivery of marijuana. They argue the lower court erred in denying their motion to suppress the evidence taken from Morris' home following an alleged illegal entry in violation of Section 901.19(1), Florida Statutes (1975), and without Morris' voluntary consent. We agree and reverse.
At the hearing on motion to suppress, Dennis Lee Fischer, special agent with the Florida Department of Criminal Law Enforcement, testified that he and other officers, on the evening of December 20, 1976, while working in an undercover capacity, met appellant King in Gainesville, Florida, who advised them he could arrange for them to purchase a large quantity of marijuana from Morris. Later that same evening Fischer went with King to Morris' home. Morris told them it would be necessary for them to return later that night since he did not have any marijuana available at that time. Upon their return, another undercover agent, Richard Carbonelli, went into Morris' home with King and saw what appeared to be marijuana inside several trash bags. He then left the house ostensibly to obtain money from Fischer for the purchase of the drugs. Fischer alerted other surveilling officers to be prepared for entry and backed his car into Morris' driveway. After waiting several minutes, Morris sent King outside to determine the cause of delay and King was promptly arrested. Fischer and two other officers then approached the front door, which had previously been opened, and saw Morris standing beside it. Morris' explanation at the hearing for his having opened the door was that when King left the house and did not return, he went to the front door in an effort to determine what was detaining him. Upon opening the door, Fischer confronted him, saying, "`Where's the shit?'" Morris immediately responded it was in the bedroom. At the time this conversation took place, Fischer stated he was standing "about a foot inside the front door." Morris testified that during his initial encounter with Fischer, Fischer and his two companions greeted him with guns drawn and hammers cocked. Fischer testified that he did not remember whether he and the other officers had drawn their weapons prior to entering the house but he did remember that once inside, and while they were approaching the bedroom where the drugs were located, their weapons were out "because we didn't know who was back there. I don't remember at what point we drew our weapons." Fischer's testimony paralleled Morris' to the extent that it was only after the officers' entry into the house that Morris was advised of his rights to an attorney and to refuse the search. Morris was also told that if he refused permission to search, the residence would be secured and an attempt made to obtain a search warrant. Defendant responded that they might as well go back in and obtain the drugs.
Section 901.19(1) provides:
(1) If a peace officer fails to gain admittance after he has announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.
In the last opinion written by Justice Terrell before his death, Benefield v. State, 160 So.2d 706 (Fla. 1964), it was held that Section 901.19(1) prohibited an unannounced intrusion into any building even though probable cause existed for the arrest of a person except (1) where the person within was already aware of the officer's authority and purpose; (2) where the officer is justified in the belief that persons within are in *122 imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within were aware of the presence of someone outside and were then engaged in activities which justified the officer in the belief that an escape or destruction of property was then being attempted.[1]
From our review of the record we find that none of the above exceptions applies. Morris had no reason to know of undercover agent Fischer's authority prior to the entry. Moreover, agent Carbonelli had previously been inside the house and had no reason to believe there was any person within other than appellants. Neither Morris nor King was seen armed; consequently no reasonable belief existed that the officers' peril would have increased had they first demanded entrance. Finally there was no reasonable ground for the belief, had the officers delayed their entry a few seconds and announced their authority, that the large quantity of marijuana could have been destroyed during the short amount of time it would have taken for the officers to comply with the statute.
It should be observed that once the officers had obtained entry into Morris' home following invitation, they could have arrested defendants on the spot since they had probable cause to believe a felony was then being committed, and the statute would have had no applicability. State v. Roman, 309 So.2d 12 (Fla. 4th DCA 1975). Moreover, even though an officer conceals his identity and obtains entry by trick or ruse, there is no violation of Section 901.19 because the entry was peaceably attained. Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965). Here, however, the officers delayed the seizure until after the illegal intrusion. Their reentry into Morris' home was without invitation. Even Fischer testified that his confrontation with Morris occurred after he was inside the house. While Fischer could not remember with specificity at what point in time he and his fellow officers displayed their weapons  although curiously his recollection of other circumstances relating to the arrest and seizure of the drugs was remarkably detailed  his testimony did not conflict with Morris', who stated that the officers' weapons were at the ready and aimed at him during the initial encounter. Consequently there was no testimony presented by the state contradicting Morris' statement that he was confronted with guns from the very moment of the officers' entry.
Once a defendant challenges his arrest and search without a warrant, the burden of proving its validity as a predicate for lawful admissions seized in evidence is upon the state. Earman v. State, 265 So.2d 695 (Fla. 1972). Moreover such an illegal search does not lose its unconstitutional taint because a defendant consents to an unlawful arrest under circumstances showing that the consent was less than free and voluntary. Id. Here, as in Earman, Morris consented to the search only after the officers illegally entered his home, with guns drawn, and prior to any warnings, obtained from him an admission as to the location of the marijuana. The taint of the prior illegal intrusion was not purged by the officers' extraction from defendant of the consent to search. Cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[2]
*123 We conclude from our review of the evidence that the lower court erred in refusing to suppress the evidence seized. Appellants' convictions are REVERSED.
MILLS, Acting C.J., concurs.
BOOTH, J., dissenting.
BOOTH, Judge, dissenting.
I would affirm the convictions. The trial court who heard the conflicting testimony and observed the demeanor of the witnesses was in the best position to evaluate the claim of appellant Morris that he was intimidated and did not voluntarily consent to the search.
NOTES
[1] The opinion continued, "Time and experience will no doubt suggest other exceptions, . ." 160 So.2d at 710. Another exception was later announced in State v. Clarke, 242 So.2d 791 (Fla. 4th DCA 1970), approved, State v. Kelly, 287 So.2d 13 (Fla. 1973), which permitted officers to enter without complying with the statute if they had only a justifiable reason that evidence might be destroyed once they announced their purpose.
[2] The facts in Wong Sun were strikingly similar to those in the present case insofar as they applied to defendant Toy. There, federal narcotic agents broke open the door to Toy's laundry and chased him into the living quarters at the back of the laundry where his wife and child were sleeping in a bedroom. When Toy reached into a night stand drawer, an agent drew his pistol, pulled Toy's hand out of the drawer and handcuffed him. Toy then informed the agents that another person had been selling narcotics. The court concluded that, from the evidence, the officers' uninvited entry into Toy's living quarters was unlawful and that the bedroom arrest which followed was likewise unlawful. As to the admissions made by Toy implicating Johnny Yee, the court held that it could hardly be said that the subsequent declarations resulted from an intervening independent act of a free will. The court concluded that under such circumstances it was unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion.