404 So.2d 361 (1981)
STATE of Florida, Appellant,
v.
John HUTCHINSON, Appellee.
No. 80-1022.
District Court of Appeal of Florida, Second District.
June 5, 1981.
Rehearing Denied October 14, 1981.
*362 Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
Jerry Hill, Public Defender, and David A. Davis, Asst. Public Defender, Bartow, for appellee.
*363 OTT, Judge.
This is an interlocutory appeal by the state from an order suppressing certain evidence taken by police officers from a satchel lying under a bench on which appellee's codefendant was sitting. Appellee was subsequently charged with possession of the contents of the satchel. The sole contention by the state is that appellee did not sustain his burden of showing that the search and seizure violated his own constitutional rights. We agree, and reverse the suppression order.
The exclusion of illegally obtained evidence was the rule in Florida long before the United States Supreme Court, in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), required state courts to follow the prohibition it imposed on the federal courts by its decision in Weeks v. United States, 323 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Mapp thus had no real effect on Florida. Sing v. Wainwright, 148 So.2d 19, 20 (Fla. 1962). The exclusionary rule is now engrafted even more firmly into Florida law. Art. I, § 12, Fla. Const. (1968).[1]
The problems which have arisen in applying the exclusionary rule have mainly centered about the question of who may raise or claim its protection. General rules have been easy to come by, but not so satisfying in practical application. Rule 41(e) of the Federal Rules of Criminal Procedure provides that any defendant "aggrieved" by an unlawful search may move to exclude any evidence thus obtained. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 679 (1960), the Supreme Court construed that language to mean that a defendant who would challenge the legality of a search must show that he was personally the victim of an invasion of privacy. This burden, declared the court, could be discharged by showing that the movant either owned or possessed the seized property or had a protected interest in the premises searched.
More recently, the Supreme Court has redefined the test for determining whether a defendant was the victim of an invasion of privacy. Ownership or possession of the seized property is no longer pertinent. The present rule tacitly defines an aggrieved defendant as one who had a legitimate expectation of privacy  i.e., a reasonable expectation of freedom from governmental intrusion  in the area searched. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).[2]
So much for the history of the federal rule. State courts are not affected when *364 the Supreme Court narrows the ambit of protection guaranteed by the Federal Constitution if, as here, state law independently guarantees protection at least equal to that required by the federal rule. Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). It is only when a state court unnecessarily hampers law enforcement because of erroneous belief that federal rules alone require it that the Supreme Court will review and reverse a judgment favorable to the accused. Oregon v. Hass, 420 U.S. 714, 718-722, 95 S.Ct. 1215, 1219-1220, 43 L.Ed.2d 570 (1975). Since Florida has its own exclusionary rule, we must determine whether it meets the minimum federal standards.
Prior to Jones, Florida subscribed to the general principle that one who would attack the propriety of a search must establish that he himself was the victim of an invasion of privacy. State v. Dycus, 238 So.2d 493, 494 (Fla.2d DCA 1970). But the long-standing rule here had been that only the owner, occupant or lessee of the premises searched had a right to privacy therein, and therefore only they could complain of the search. Mixon v. State, 54 So.2d 190, 192[5] (Fla. 1951). A few cases decided by intermediate appellate courts, notably State v. Dycus, supra, and Alexander v. State, 107 So.2d 261 (Fla.2d DCA 1958), contain language suggesting that ownership or a possessory interest in the property seized also bestowed "standing" to challenge the search, but we can find no such statement emanating from the Florida Supreme Court. We also note that Dycus, for example, merely echoed Jones, as we were obliged to do while that opinion represented the latest views of the Supreme Court on Fourth Amendment guaranties.
We conclude that the rule in Florida, independent of any overriding federal minimums, is the statement by our supreme court in Mixon v. State, supra, which accords to only the owner, lessee or occupant the right to complain of the search of an area. We use the present tense, notwithstanding the fact that in 1972 the Florida Supreme Court adopted a set of rules governing the courts of this state, and that rule 3.190(h) of the Rules of Criminal Procedure is practically identical to federal rule 41(e), permitting exclusion motions by any "aggrieved" defendant. We are not prepared to say, and indeed it is hardly our place to say, that in adopting that rule the supreme court intended to broaden the Mixon rule. In short, Mixon and rule 3.190(h) are not necessarily in conflict. If they are, it is for our supreme court to say so.[3]
We thus compare Mixon with Salvucci. The federal rule, while representing a substantial narrowing of the Jones concept, obviously extends Fourth Amendment protection to many defendants who would be unable to meet the rigid owner/lessee/occupant test. There might be a few isolated instances in which the reverse would be true, but in most cases owners, lessees and occupants will experience little difficulty in establishing a reasonable expectation of privacy in their premises.
Having concluded that Salvcci affords protection denied by Mixon, it necessarily follows that the Salvcci rule now controls in this state, and we so hold.
Appellee argues that his motion was made, argued and ruled upon more than a month before the Salvucci opinion was handed down, and therefore he had "automatic standing" under Jones. It is true that the exact status of Jones was unsettled until Salvucci as the court conceded there.[4] *365 We have already noted that the most significant change effected by Salvucci was its unheralded repudiation of the Jones theory that ownership or possession of the property seized in an illegal search bestowed standing to complain. Salvucci offhandedly labels that an "unexamined assumption" (100 S.Ct. at 2552) and concentrates the fire of express disapproval on the "automatic standing" aspect of the Jones opinion.
It would be a mistake, however, to conclude that "automatic standing" was a viable concept until the point-blank rejection by Salvucci. That was merely the coup de grace, which also provided a cover for the quiet elimination of what the Salvucci majority evidently viewed as Jones' greater defect  that "unexamined assumption." The new test devised by Salvucci, focusing on invasion of privacy in the area searched, allows no room for complaint that property belonging to the accused was discovered and seized as a result of a search which illegally invaded someone else's privacy.
The "automatic standing rule" was merely the Jones solution to the dilemma facing a defendant accused of the possession of contraband seized by an illegal search of premises in which he had no special interest. In order to qualify to attack the search, he had to prove his ownership or possession of the contraband. If his suppression motion failed, he stood convicted out of his own mouth. Jones solved that by declaring that when the prosecution charges possession as the basis of its complaint, it should not be heard to deny its own allegation for purposes of the suppression motion. A charge of possession would automatically entitle the accused to challenge the search, thus avoiding any necessity for him to testify or otherwise prove his ownership or possession of the contraband.
There was, however, an obvious alternative, and the Court found it in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Thereafter, testimony or other evidence presented by an accused in attacking a search or seizure could not be used by the prosecutor to prove guilt, whether the charge was possessory or nonpossessory. Although the "automatic standing rule" was not expressly discarded, nor even questioned, the effect of the new solution to the "self-incrimination dilemma, so central to Jones," was obvious. Brown v. United States, 411 U.S. 223, 228-229, 93 S.Ct. 1565, 1568-1569, 36 L.Ed.2d 208 (1973).
We think that Simmons, not Salvucci, freed trial courts of all obligation to accord "automatic standing" to defendants wishing to challenge the legality of a search or seizure. That rule was devised to avoid what the Supreme Court deemed an impermissible requirement of election between constitutional guaranties. Simmons completely eliminated that problem. When the reason for the rule vanished, so did the rule itself, or at least the necessity for complying with it. The fact that the rule was not formally interred until twelve years later, in Salvucci, has no bearing on whether a grant of "automatic standing" was necessary in order to protect a defendant's constitutional rights in the interim.
Appellee asserts that his standing to attack the search was never challenged in the trial court, and therefore cannot be questioned here. That argument necessarily assumes that the state had the burden of establishing lack of standing when the motion to exclude was heard below. Appellee in fact makes an explicit contention that the state indeed did have that burden because it was uncontroverted that the search was made without a warrant, thus imposing upon the prosecutor an obligation to overcome the prima facie presumption of illegality. Appellee's predicate is correct, but his ultimate conclusion is completely extraneous to the question before us. A determination that a search was illegal can no longer exist in a vacuum  it must be shown to be illegal as to the complainant. No *366 matter how egregious a violation of privacy may have been, the court will not even listen to a complaint unless it comes from one whose privacy was violated.
The burden of making that showing is upon the one challenging the search. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 423-424, n. 1, 58 L.Ed.2d 387 (1978). If he fails to sustain that burden, an order suppressing the seized evidence is error because the illegality of the search has not been established.
Finally, appellee suggests that the Florida exclusionary rule, as embodied in our constitution, explicitly bars the use of illegally obtained evidence for any purpose, and thus the question of preliminarily establishing standing cannot arise in this state. We disagree. Although the literal import of the constitutional prohibition might sanction that result, the language has never been given such an interpretation. What appellee is urging us to do is adopt the California rule, sometimes referred to as a "vicarious" exclusionary rule, which simply declares that illegally obtained evidence is not admissible, at least as evidence of guilt, in any court against any defendant. People v. Martin (1955), 45 Cal.2d 755, 290 P.2d 855; People v. Solari (1977), 19 Cal.3d 760, 139 Cal. Rptr. 725, 566 P.2d 627. That construction of the federal exclusionary rule was expressly rejected by the Supreme Court in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The rule in Florida, that property seized in violation of the constitutional rights of the person against whom it is offered in evidence is not admissible as to him, appears to be the rule in most jurisdictions. 50 A.L.R.2d 531 [§ 10].
There remains the question of just what to do with the order at bench. Notwithstanding our conclusions with respect to the burden facing appellee when he made his motion below, we are hesitant to declare flatly that at that time the law clearly precluded him from relying upon "automatic standing." The prosecutor tacitly conceded "automatic standing" to appellee by never raising the issue. Even on this appeal the state's argument is not predicated upon the effect of Simmons, but upon an assumption that Salvucci should be given retroactive effect. Moreover, as we have noted, Salvucci itself is somewhat ambiguous in explaining the exact status of Jones after Simmons and Rakas.
In view of that uncertainty, and the fact that suppression was in fact ordered, we are not prepared to hold that because appellee initially failed to show any right of privacy in the area of the search he is forever foreclosed from doing so. We think that fairness to the parties and the court below requires that the issue be fully addressed and properly determined under the new standard.
The suppression order is vacated and the case is remanded for determination of whether appellee's rights were violated by the search. Under the current test, the answer to that question will not depend upon a charge or the fact that he had a possessory or ownership interest in the seized property, nor upon his status as owner, occupant or lessee of the area searched, but upon whether his property was unlawfully seized from a place which he reasonably believed to be safe from governmental intrusion.
GRIMES, Acting C.J., and CAMPBELL, J., concur.
NOTES
[1] Article 1, section 12:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall not be violated... . Articles or information obtained in violation of this right shall not be admissible in evidence.
[2] Salvucci implies that the Jones rule was effectively repudiated in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). But we have difficulty with that analysis. Rakas discarded the concept of "standing" in favor of forthright recognition that, as a matter of substantive law, proof that a search or seizure was illegal necessarily entails a showing that rights of the accused were violated. 439 U.S. at 139, 99 S.Ct. at 428. If they weren't, there would be no illegality as to him, and that is, after all, the sole issue.

Rakas did abandon the Jones concept that the rights of any person "legitimately on the premises" were necessarily violated by an illegal search thereof (439 U.S. at 146, 99 S.Ct. at 432), but we fail to find any disapproval of Jones' key underpinning, the then-widely-recognized principle that proof of ownership of the property seized in an illegal search was sufficient to establish a violation of Fourth Amendment rights.
In fact, Rakas explicitly recognized the continued validity of that proposition by noting that "[t]his is not to say that such [casual] visitors could not contest the lawfulness of the seizure of evidence OR THE SEARCH if their own property were seized during the search." 439 U.S. at 142, n. 11, 99 S.Ct. at 430, n. 11 (emphasis added). Even in summation, Justice Rehnquist's acceptance of that concept is unmistakable: "... petitioners' claims must fail. They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." 439 U.S. at 148[57], 99 S.Ct. at 433[8].
It is clear that not until Salvucci did the Court quietly eliminate the basic predicate for the rules devised by Jones. The significance of that timing will be shown in a moment.
[3] We are aware of the familiar rule that in construing a statute copied from another jurisdiction we may "properly" take note of the construction placed upon such language by the highest court of that jurisdiction at the time we adopted such law. State v. Aiuppa, 298 So.2d 391, 394 (Fla. 1974). Since to do so in this case would saddle Florida with the 1972 federal version of the "standing" rule enunciated by Jones, modified only by elimination of the "automatic" feature (infra), and since we infer that we may also "properly" decline a construction so delegated, we will not graft an already-discredited rule into Florida law.
[4] The Salvucci majority opinion approves the Court of Appeals' analysis of the Jones' rule as "challenged in recent years, but ... [not] overruled ... [since] that is an issue which the Supreme Court must resolve." 100 S.Ct. at 2550. Yet in Rakas the court recognized that Jones' automatic standing rule may not have survived Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and, more importantly, conceded that such a rule permitted vicarious assertion of Fourth Amendment rights. 99 S.Ct. at 426, n. 4.