GRIMES, Judge.
This opinion focuses on the concept of standing to challenge allegedly illegal searches and arrests in the context of a state appeal from an order granting motions to suppress physical evidence and identifications.
The state charged Vance Loeffler, Norman DeJong and Nanette Ritter with possession of methaqualone. In addition, it charged appellees Loeffler and Ritter with sale of methaqualone, use of a firearm during the commission of a felony, and carrying a concealed firearm, and it charged appellee DeJong with possession of marijuana. All three moved to suppress the evidence which formed the basis for these charges as well as evidence of their identities.
At the outset of the hearing on the motions to suppress, the state asserted that appellees’ motions were insufficient because they failed to demonstrate that appellees had standing to challenge the various searches and seizures. After considerable argument from all parties on the standing issue, the court ruled that the motions were sufficient. The hearing then proceeded, and witnesses gave the following account of the incidents which led to appellees’ arrests.
Detective Tom Ward of the Pinellas County Sheriff’s Department, while working undercover, met with James Schneider in a motel room at a Holiday Inn in Clear-water to arrange for the purchase of 100,-000 quaalude (methaqualone) tablets for $170,000. After counting the money proffered by Ward, Schneider made a phone call, asking for extension 131. Schneider then informed Ward that he was going to leave but would return soon with the pills. He drove away in a Mercury which belonged to his roommate John Gregarsky.
Lieutenant James Coates of the Pinellas County Sheriff’s Department followed Schneider from the Holiday Inn south on U.S. 19 to the Continental Inn. There he observed Schneider, Robert Smith, and possibly a third person place heavy containers in the trunk of Schneider’s car. Coates noted that Schneider had parked adjacent to room 131 of the Continental Inn which was registered in Smith’s name, and he observed both Smith and Schneider go into and come out of that room. He decided that if Schneider and Smith attempted to leave the motel, he would arrest them.
Several detectives then proceeded towards room 131. On the way there, they met Schneider and Smith coming from the room and placed them under arrest. Detectives Platt and Montgomery continued on to room 131 and knocked on the door. In response to a query from inside, Platt said that he was “Jimmy.” When the door was opened about a foot, Detective Montgomery observed quaalude pills on a table. As a result, the officers identified themselves to Mr. DeJong who had opened the door. Montgomery confronted Mr. Loeffler who was in the room and searched him, discovering a loaded, operable gun. The officers then searched Ms. Ritter who was also in the room and found that she too possessed a gun in her purse.
After arresting all five suspects, the officers seized car keys from Mr. Schneider and Mr. DeJong. Detective Montgomery searched the Mercury Monarch driven by Schneider and found open boxes which appeared to contain quaalude tablets in clear *591 plastic bags in the trunk. Montgomery also searched a 1979 Mercury Cougar rented to Mr. Loeffler, the keys to which he had taken from DeJong, and found three boxes identical to the type found in the Monarch.
Following the presentation of evidence and arguments of counsel, the court granted appellees’ motions to suppress all of the evidence found in the motel room and the two cars. The court also suppressed the identities of appellees finding that the officers’ entry into room 131 violated Florida’s “knock and announce” statute and thereby made appellees’ arrests illegal.
On appeal, the state contends that under recent court decisions on both the state and federal level, the trial court erred in not initially requiring appellees to demonstrate that they had standing to challenge the search of the motel room and the two automobiles. Appellees, arguing in support of the trial court’s position on standing, assert that Florida should retain the rule that a defendant charged with a possession offense has automatic standing to challenge the search and seizure which produced those materials on which the charge is based. In addition, they argue that section 901.19, Florida Statutes (1979), which contains Florida’s knock and announce rule also gives automatic standing to defendants who, like them, challenge an arrest made in violation of that statute. Upon consideration, we have concluded that the case must be returned to the trial court for a determination of appellees’ standing to challenge the search of the room and the cars as well as the entry into the motel room which led to their arrest.
We begin our discussion with the question of appellees’ standing to challenge the room and car searches. At the time the trial court made its ruling which in effect gave appellees automatic standing, it did not have the benefit of our decision in State v. Hutchinson, 404 So.2d 361 (Fla. 2d DCA 1981). There we held that the doctrines announced in the case of United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), did in fact control in this state. In Salvucci, the United States Supreme Court rejected the automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and held that when a defendant charged with a possessory offense seeks to challenge the seizure of the substance which forms the basis of the charge against him, he must first show that he had a legitimate expectation of privacy in the area searched. This being the law of Florida, it is clear that the court should have required appellees to demonstrate that they had a reasonable expectation of privacy in the motel room and the two cars before it allowed them to challenge the seizure of the drugs and weapons found there. While we are not in a position to determine the issue here, we note that a question as to appellees’ reasonable expectation of privacy does exist since the motel room was registered in none of their names and there is nothing in the present record to indicate that any of them had possession or control over Mr. Schneider’s car. In addition, it is unclear as to who had control over the second car since it was apparently rented to Mr. Loeffler but its car keys were in the possession of Mr. De-Jong. These, of course, are matters which the trial court will be able to sort out on remand.[1]
There remains appellees’ contention that section 901.19(1), Florida Statutes (1979), gave them automatic standing to challenge the police officers’ entry into the motel room and their subsequent arrest.[2] Section 901.19(1) reads as follows:
*592 If a peace officer fails to gain admittance after he has announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.
In making their argument, appellees assert that since the protections offered by section 901.19(1) are independent of constitutional protections against unreasonable searches and seizures, the limited standing rules of cases such as Salvucci and Hutchinson simply do not apply to a defendant seeking to use the statute to invalidate an arrest.
The case law which has developed around section 901.19 makes it clear that absent certain exceptions which are not here relevant, officers who wish to enter a building to effect an arrest must first knock and announce their identity and purpose. In cases where there has been a failure to comply with these requirements, the courts have declared the resulting arrests to be illegal. E.g., Benefield v. State, 160 So.2d 706 (Fla.1964). Practically all of these cases dealt with the owners or permanent occupants of the buildings, so there was never any issue over standing. Presumably because of the automatic standing rule of Jones v. United States, the question was not even raised in the occasional case where there might have been a doubt. E.g., King v. State, 371 So.2d 120 (Fla. 1st DCA 1978), cert. denied, 378 So.2d 349 (Fla.1979). Thus, there is an open question in Florida with respect to whether one must prove standing in order to claim protection under section 901.19.
It is our judgment that the same questions concerning the reasonable expectation of privacy must be considered when a defendant seeks the protection of section 901.-19(1) as when he seeks constitutional protection against illegal searches and seizures. This conviction arises from an examination of the intent behind the enactment of the statute. As the opinion in Benefield points out, the purpose of section 901.19(1) is to protect the privacy of the occupants of a building, a purpose which, of course, is similar to the purpose of the fourth amendment to the United States Constitution[3] and article I, section 12 of the Florida Constitution.[4] See, e.g., Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Thus, the court in Benefield stated:
Entering one’s home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus. Judge Prettyman for the Court of Appeals in Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456, 465, discussed the history and reasons for it. See also 22 Mich.L.Rev. 541, 673, 798, “Arrest Without a Warrant,” by Wilgus.
.... The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly. The *593 law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country.
160 So.2d at 709. Viewing the statute in this light, it becomes apparent that as its purpose parallels that of the constitutional guarantees against search and seizure, so should its protection extend no further than do those constitutional protections. Surely, for example, the legislature could not have intended to extend the protection of knock and announce to a trespasser in a building. Thus, we hold that in order for an individual to assert the protections of the knock and announce statute, that person must show that he had a legitimate expectation of' privacy in the building which the police have entered.
Just as there is a question concerning appellees’ legitimate expectation of privacy in the motel room and the automobiles, there is also a question of whether appellees had standing under section 901.-19(1) to object to the officers’ failure to knock and announce their identity and purpose. Accordingly, we reverse the orders granting the motions to suppress and remand the case to the trial court for a determination of appellees’ standing as it relates to all phases of their motions.
BOARDMAN, A. C. J., and RYDER, J., concur.

. For a discussion of the nature of a reasonable expectation of privacy, see Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

. If, as appellees suggested in the trial court, the searches of the hotel room and the cars were the fruit of their illegal arrest, this might arguably have given them whatever standing section 901.19(1) provides to challenge those searches independent of the basis for standing we have already discussed. However, we need not explore this further in view of our decision on the scope of standing under section 901.-19(1).

. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.