454 So.2d 774 (1984)
The STATE of Florida, Appellant,
v.
Larry JONES, Appellee.
No. 83-2300.
District Court of Appeal of Florida, Third District.
August 28, 1984.
*775 Jim Smith, Atty. Gen. and G. Bart Billbrough, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender and Rory S. Stein, Asst. Public Defender, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
BARKDULL, Judge.
In this appeal we are called upon to review the propriety of an order suppressing certain tangible property, to wit: 48 cans of spray paint. From the record the following is found. At approximately 2:40 A.M., on March 31, 1983, two City of Miami police officers were patrolling in the commercial area of N.W. 20th Street, Miami, Dade County, Florida. The officers observed Larry Jones standing in front of City Auto Parts with a grocery cart containing several cartons. The officers circled the block, radioed that a possible burglary was in progress and returned to the corner where they had first observed Jones. After returning to the corner, the officers noticed that Jones had walked away from the grocery cart. The officers called for his attention, asked him to walk over to the car and stated that they wished to speak to him. Jones replied, "what about"? The officers asked why he had been pushing a shopping cart. Jones responded by stating that he didn't know anything about it. When confronted by the fact that the officers had seen him pushing the cart, Jones said he had been asked to "keep an eye on it" for some other individuals and that the contents did not belong to him. When asked for identification, Jones had none. He stated that he lived in the Overtown area and pointed in a southward direction. When confronted by the officers' observation that he had been walking in the opposite direction, Jones stated that he was really on his way to a gas station to get a soda. When the officers observed the contents of the boxes in the grocery cart, Jones was placed under arrest for loitering and prowling. He was subsequently charged with grand theft. At the conclusion of the suppression hearing the trial court orally ruled that the statement, "Will you come back to the car", constituted an arrest. The court also concluded that the officers were acting on bare suspicion and did not have sufficient grounds to conduct a stop and frisk and therefore the arrest was illegal and the search of the contents of the four cartons were suppressible under the "fruit of the poisonous tree doctrine".
We find that the trial court erred in suppressing the 48 cans of spray paint seized from the boxes inside the grocery cart. In order for an individual to invoke the benefits of the exclusionary rule and request suppression of evidence, it is necessary that he be a person aggrieved by the law enforcement conduct in question. In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court held that the proponent of a motion to suppress has a burden of establishing that his own constitutional rights were violated by the challenged search and seizure. The courts of this state have similarly recognized that the defendant bears this burden of proof with regard to his expectation of privacy. State v. Hutchinson, 404 So.2d 361 (Fla. 2d DCA 1981); Herman v. State, 396 So.2d 222 *776 (Fla. 4th DCA 1981). If a defendant has failed to sustain his burden, the entry of an order suppressing evidence would be in error because the illegality of the search has not been demonstrated. State v. Hutchinson, supra.
Jones disavowed any knowledge of the boxes and, at best, stated that he was merely keeping an eye on them for someone else. Courts have uniformly recognized that the disclaiming of ownership or knowledge of an item ends any legitimate expectation of privacy in that item. State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979). See, also United States v. Hawkins, 681 F.2d 1343 (11th Cir.1982); United States v. Pirolli, 673 F.2d 1200 (11th Cir.1982); United States v. Bush, 623 F.2d 388 (5th Cir.1980); United States v. Canady, 615 F.2d 694 (5th Cir.) cert. denied, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); United States v. Colbert, 474 F.2d 174 (5th Cir.1973) (en banc). The disclaimers by Jones regarding the property refutes any suggestion that an expectation of privacy existed.
The trial court further erred in concluding that the officers effectuated a "stop" or arrest during the initial encounter with Jones. The officers were merely conducting a preliminary investigation which did not involve Fourth Amendment violations. Having failed to dispel the officers' suspicion, Jones was subjected to a lawful arrest for the offense of loitering and prowling.
The United States Supreme Court's decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), makes clear that there are three types of police/citizen encounters: full scale arrest that must be supported by probable cause, brief "seizure" that must be supported by reasonable suspicion, and mere contact between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment and of Article I, § 12 of the Florida Constitution.
In Royer, the Supreme Court elaborated on mere contacts between police and citizens:
"(L)aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some question, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); Terry v. Ohio, 392 U.S. 1, 31, 32-33, 88 S.Ct. 1868, 1885-1886, 20 L.Ed.2d 889 (1960) (Harlan, J., concurring); Id., at 34, 88 S.Ct., at 1886 (White, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Opinion of Stewart, J.). The person approached, however, need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, supra, 392 U.S., at 32-33, 88 S.Ct., at 1885-1886 (Harlan, J., concurring); Id., at 34, 88 S.Ct., at 1886 (White, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, 446 U.S., at 556, 100 S.Ct., at 1878 (Opinion of Stewart, J.). If there is no detention  no seizure within the meaning of the Fourth Amendment  then no constitutional rights have been infringed." Florida v. Royer, supra, 103 S.Ct., at 1324.
It is this category of police/citizen contact that governs the present case. Both officers had an admittedly bare suspicion that Jones may have been involved in a burglary. Nothing about this suspicion, *777 however, prevented them from seeking to dispel their concerns by talking with him. The officers used no force, threats, or coercion in talking with him. When asked if he would walk to the police car to talk with the officers, Jones agreed. He voluntarily answered all inquiries.
The officers in this case strictly followed the requirements of § 856.021, Fla. Stat. As required by the loitering and prowling statute, the officers afforded Jones an opportunity to dispel their suspicion by identifying himself and explaining his presence. Jones was found during the early morning hours alone in a commercial district. He had been seen pushing a shopping cart full of cartons, but disavowed any knowledge of them when confronted by police. He carried no identification and gave factually conflicting explanations regarding his intentions. As a result, his arrest was lawful and the seizure of the boxes proper.
Therefore the order of suppression under review be and the same is reversed and the cause is remanded to the trial court for further proceedings.
Reversed and remanded with directions.