659 So.2d 465 (1995)
The STATE of Florida, Appellant,
v.
Shawn RUSSELL, Appellee.
No. 94-2446.
District Court of Appeal of Florida, Third District.
August 23, 1995.
*466 Robert A. Butterworth, Atty. Gen., and Paulette R. Taylor, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Melodee Smith, Sp. Asst. Public Defender, for appellee.
Before SCHWARTZ, C.J., and BASKIN and COPE, JJ.
COPE, Judge.
The State appeals an order granting suppression of evidence. We reverse.
The defendant was charged with burglary of an unoccupied structure and grand theft. He filed a motion to suppress evidence, arguing that the officer lacked reasonable suspicion to make an investigatory stop or probable cause to make an arrest.
At the hearing on the motion to suppress, an officer of the Miami Beach Police Department testified that he was on burglary surveillance in a "very sensitive high burglary area"[1] of Miami Beach. At approximately 6:00 a.m., while it was still dark, the officer observed defendant riding a bicycle in an alleyway behind some stores. This was in an exclusively commercial area, at a time when no stores were open. The officer observed that the defendant had over his shoulder what appeared to be a sack containing some squared-off items. The squared-off objects looked like appliances of some sort. The defendant was having problems steering the bicycle, apparently because of the weight of the sack. The officer drove alongside the bicycle and asked the defendant if he lived in the area and the defendant responded with a head motion. When the officer asked him to be more specific, the defendant then gave an address which was outside of Dade County. When the officer asked him where he was going, he gave an address in the city. The officer then asked the defendant to stop the bicycle and talk to him.
The defendant stopped, dismounted from the bicycle and placed the sack with the squared off objects on the trunk of the officer's vehicle. The officer then noticed that the sack was in fact a shirt and that a small compact disc player was sticking out of the sleeve of the shirt. The officer twice asked the defendant what was in the shirt and the defendant twice responded that it was a VCR. The officer picked up the compact disc player and pulled it out of the sleeve of the shirt. As soon as he did so, the defendant immediately said, "Oh, and the compact disc player." The officer asked the defendant to identify the name brand of the compact disc player and the defendant was unable to do so.
At this point, the officer asked the defendant to place his hands on the vehicle and called for assistance. While he was waiting for the units to assist, he searched the shirt *467 and found two VCR's. He asked the defendant to name the brands of the VCR's and the defendant was able to name one brand, but not the other. The officer then found a repair bill for one of the VCR's. The repair shop was close by. The officer asked a police unit to go check the address. The officer was advised by radio that there had been a break-in at that address. After transporting the defendant to the burglarized store and receiving verification from the owner that the defendant had not been given permission to enter the premises, the officer formally arrested the defendant.
The defendant moved to suppress the stolen property contained in the bag.[2] After an evidentiary hearing in which only the officer testified, the trial court granted the motion. The trial court's written order stated that the officer did not have a founded suspicion to make an investigatory stop.[3] The State has appealed.
We respectfully disagree with the trial court that the officer lacked a founded suspicion to detain the defendant for an investigatory stop. An investigatory stop is authorized when a law enforcement officer "encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws[.]" § 901.151(2), Fla. Stat. (1993). There must be a reasonable, or founded, suspicion that criminal activity may be afoot. See United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989); Popple v. State, 626 So.2d 185, 186 (Fla. 1993).
To justify a stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably justify the stop. The [Supreme] Court announced the following objective standard by which a reviewing court should judge the reasonableness of the intrusion: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, 392 U.S. 1 at 21-22, 88 S.Ct. [1868] at 1880 [20 L.Ed.2d 889].
State v. Webb, 398 So.2d 820, 822 (Fla. 1981). Among the factors that may be considered are:
The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of any operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge.
State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978); see generally 3 Wayne R. LaFave, Search & Seizure § 9.3. However, the Supreme Court has cautioned that "[t]he concept of reasonable suspicion, like probable cause, is not `readily, or even usefully, reduced to a neat set of legal rules,'" United States v. Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (citation omitted), and that the totality of the circumstances must be considered. Id.
Here the defendant was in an alleyway behind closed businesses in the dark at 6 a.m., in an exclusively commercial district which had recent burglaries, and was carrying a heavy bag containing squared-off objects which appeared to be appliances. There were more than enough facts to create a reasonable suspicion. See State v. Jenkins, 566 So.2d 926 (Fla. 2d DCA 1990); State v. Jones, 454 So.2d 774 (Fla. 3d DCA 1984); see also 3 Wayne R. LaFave, Search & Seizure § 9.3(c), at 440-41. The investigatory stop was proper.
Defendant argues alternatively that even if the officer had a founded suspicion for an investigatory detention, there was no probable *468 cause to arrest him prior to the officer's search of the "shirt-sack" and that therefore the search was illegal.[4] We disagree.
Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it. See Shriner v. State, 386 So.2d 525, 528 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); State v. McCormack, 517 So.2d 73, 74 (Fla. 3d DCA 1987); Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983).
"The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based." Shriner v. State, 386 So.2d at 528. "`In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544 (1983) (citation omitted). "The officer need not actually see the law being violated nor must he satisfy himself beyond any question that a felony has been committed." Russell v. State, 266 So.2d 92, 93 (Fla. 3d DCA), cert. denied, 271 So.2d 140 (Fla. 1972). An officer is permitted to take a realistic view of the facts in making a probable cause determination, see State v. Maya, 529 So.2d 1282, 1287 n. 7 (Fla. 3d DCA 1988), "for [p]robable cause is a matter of practicalities, not technicalities." McNeil v. State, 512 So.2d 1062, 1064 (Fla. 4th DCA 1987) (citation omitted), review denied, 519 So.2d 987 (Fla. 1988).
In the present case the officer stopped the defendant in an alleyway behind closed businesses in the dark at six o'clock in the morning. This was in a deserted commercial area where no businesses were open. Defendant was carrying what appeared to be a sack containing squared-off objects that looked like appliances. When the defendant dismounted from his bicycle, he put the bag on the trunk of the officer's police car. On closer inspection, the officer could see that the bag was actually a makeshift container fashioned from a shirt, which would not be the customary method of carrying a piece of electronic equipment, but might well be fashioned as a temporary container for stolen goods. In response to the officer's question, the defendant claimed that his address was outside of Dade County, although he was riding on a bicycle in a municipality well inside Dade County. The officer twice asked the defendant what was in the bag. The defendant twice gave the untruthful statement that the sack only contained a VCR, when the officer could plainly see a compact disc player protruding from the shirt sleeve. This occurred in an area with a recent burglary problem, and the officer was, in fact, on burglary surveillance at the time of these observations. Under all of the circumstances, a reasonable officer would be warranted in drawing the conclusion that a crime had been committed.
The trial court ruled to the contrary because at the time the officer made this stop, the burglary at the appliance store had not yet been reported. The trial court felt that unless there was a confirmation of an actual break-in, there could be no probable cause to arrest the defendant. Here, the officer detained the defendant and searched the bag prior to the backup officers' confirmation of the burglary at the appliance store. That being so, the trial court concluded that probable cause had not existed prior to the search of the bag, and that the evidence found in the bag must therefore be suppressed.
We must respectfully disagree with the trial court on this point.
[I]t is not essential to a finding of probable cause that the officer be able to relate the person or property to some particular prior crime. An arrest for burglary and a search of a vehicle for the fruits thereof, for example, is not rendered illegal by "the mere fact that, at the time the search and *469 seizure occurred, the officer was unaware of any specific burglary."
2 Wayne R. LaFave, Search & Seizure § 3.6(a), at 32 (footnotes omitted). We conclude that there was probable cause for the arrest and that the search incident thereto was valid.[5]
The order under review is reversed and the cause remanded with directions to deny the motion to suppress.
NOTES
[1] The judge sustained an objection to the testimony that the area was a "sensitive high burglary area." This was error. An arresting officer's knowledge of recent burglaries in the area is a relevant circumstance which may properly be considered (in conjunction with other factors) to support a founded suspicion, see State v. Kibbee, 513 So.2d 256, 258-59 (Fla. 2d DCA 1987), or probable cause. United States v. Jimenez, 780 F.2d 975, 978 (11th Cir.1986); State v. Smith, 477 So.2d 658, 661-62 (Fla. 5th DCA 1985); see also 2 Wayne R. LaFave, Search & Seizure § 3.6(f), at 70 (fact that neighborhood has high incidence of burglaries may properly be considered in determining the existence of probable cause), § 3.6(g), at 74 (officer's knowledge of the character of the area "is a part of his expertise, and thus may be utilized in deciding whether certain facts constitute probable cause.") (2d ed. 1987).
[2] Defendant also moved to suppress the statements he made during the stop, and glass fragments that were discovered to be embedded in defendant's shoes.
[3] The judge's oral pronouncement in the transcript of the hearing and the written order differ on this point. The judge stated at the hearing that he thought that the officer "had every right to stop him. I think it's an appropriate reasonable suspicion." The written order, however, states that the officer did not possess sufficient facts to make an investigatory stop and that he had a mere suspicion, not a founded suspicion, to believe that criminal activity was afoot.
[4] Although the written order does not reach the probable cause issue, the judge's oral pronouncement at the hearing was that the officer lacked probable cause at the time of the arrest.
[5] It is well settled that a search incident to an arrest may precede the formal arrest as long as probable cause existed prior to the search. State v. Joseph, 593 So.2d 594 (Fla. 3d DCA 1992); T.M. v. State, 570 So.2d 1129 (Fla. 3d DCA 1990); Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982), review denied, 426 So.2d 29 (Fla. 1983); State v. Hughes, 375 So.2d 615 (Fla. 3d DCA 1979).