BARFIELD, C.J.
Appellee was charged with burglary of a dwelling and grand theft. The State seeks review of an order granting appellee’s motion to suppress physical- evidence and statements. We reverse in part and remand.
*268 At the hearing on the motion to suppress, Lieutenant Johnson of the Starke Police Department testified that he was off-duty on January 28, 1998. He was outside his home around 5:30 to 6:00 p.m. when he saw appellee riding a bicycle in the neighborhood. He knew appellee personally and knew appellee had been convicted of felonies such as burglary and theft. Appellee did not live in the neighborhood. Johnson initially radioed regarding appellee’s identity and location, and asked someone to contact and identify him and make sure there were no outstanding warrants.
After the initial radio contact, Johnson saw appellee pass behind his brother’s house. He lost sight of appellee for one and one-half to two minutes. Johnson stated he would have seen if appellee had traveled on past his brother’s house. He next saw appellee traveling back in the direction from which he had come. Appel-lee was actually still on the grass at the time he came out from behind the brother’s house. Appellee was not carrying anything when Johnson first noticed him. When appellee emerged from behind the brother’s house, he was balancing a large object on his head. Johnson then contacted officers on duty and instructed them to make contact with appellee and identify the object he was carrying.
Officer Morgan testified that he heard Johnson on the radio stating appellee was in a certain area that was being heavily patrolled due to the fact that there had been several burglaries in the area. Morgan testified that Johnson, during the first radio contact, reported appellee had tools of some kind strapped on the bicycle. Morgan proceeded to the area to see if he could locate appellee, with the intention to make a citizens’ contact due to the burglaries in the area. While en route to the area, Morgan testified that Johnson again came on the radio and reported that appel-lee was leaving the area around Johnson’s brother’s house and now had a chair or something on his head. When Morgan spotted appellee, appellee was three to four blocks from the home of Johnson’s brother and had a large wicker chair on his head. Morgan testified he stopped his vehicle to get out, and turned on his emergency tail lights because he was in the roadway and wanted any approaching vehicles to be able to clearly see his vehicle.
After Morgan was able to identify the object on appellee’s head, Morgan contacted Johnson and informed him the object was a large brown chair. Johnson stated he was the caretaker of his brother’s property and had knowledge of a chair matching the description on the rear screened-in porch at the brother’s home. Johnson had last seen the chair a few hours before, secured on the back porch. Johnson advised Morgan he was en route to identify the chair. Johnson first went to his brother’s home and verified the chair was missing.
Morgan stated appellee then rode up to patrol car and Morgan asked if he could talk to him. Upon inquiry, appellee told Morgan he found the chair beside the roadway, apparently placed there by someone as trash for pickup by a sanitation crew. At no time during the encounter was appellee advised of his Miranda rights.
We affirm the trial judge’s finding that the contact between Officer Morgan and appellee did not constitute a citizen encounter or field interview. The judge determined that nothing in the officer’s actions or statements to appellee suggested he had any opportunity or right to refuse to stop, to refuse to respond to questions, or to resume his travels at any time following the initial stop. The actual contact was accomplished by Morgan activating emergency blue and red flashing lights, exiting the vehicle, and asking ap-pellee to speak with him.
The judge erred, however, in finding that the officer who had the first contact with appellee did not have the necessary founded suspicion to make the type of stop that occurred in this case. At *269 the time appellee was stopped, the officer had a reasonable, well-founded suspicion of criminal activity sufficient to justify an investigatory stop. § 901.151(2), Fla. Stat. (1997); State v. Russell, 659 So.2d 465 (Fla. 3d DCA), review denied, 665 So.2d 220 (Fla.1995). The chair and the tools on the bicycle were in plain view. The cutting tool taken from appellee’s pocket was discovered in a search incident to arrest after probable cause to arrest existed. The record does not establish, however, whether statements made by appellee were before or after probable cause to arrest was established. Accordingly, suppression of appellee’s statements is affirmed but that portion of the order suppressing physical items is reversed.
REVERSED in part and REMANDED.
MINER and PADOVANO, JJ„ Concur.