# Third District Court of Appeal

**State of Florida**

Opinion filed May 18, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2418
Lower Tribunal No. 09-33121
_____

**Tyler Darnell,**
Appellant,

vs.

**The State of Florida,** Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Monica Gordo, Judge.

Carlos J. Martinez, Public Defender, and Stephen J. Weinbaum, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Robert Martinez Biswas, Assistant Attorney General, for appellee.


Before ROTHENBERG, SALTER, and SCALES, JJ.

ROTHENBERG, J.

The defendant, Tyler Darnell, appeals his convictions and sentences for second degree murder and attempted second degree murder by challenging the denial of his motion to suppress his videotaped statement to law enforcement, the admission of the surviving victim's hearsay statement, and the denial of his motion for judgment of acquittal. Because we find no reversible error, we affirm.

The defendant was charged with the second degree murder of Adan Castillo-Moreno and the attempted first degree murder of Frederico Hernandez, who were stabbed in the side alley of a shopping center where Lili's Cafeteria is located. Prior to trial, the defendant moved to suppress the videotaped statement he gave to law enforcement following his arrest in which he confessed to stabbing both victims in self-defense. In moving to suppress his statement, the defendant argued that his arrest was based on his "mere presence" in the area of Lili's Cafeteria both prior to and after the stabbings, which did not constitute probable cause, and therefore, his videotaped statement must be suppressed.

The testimony presented at the suppression hearing reflects that the manager of Lili's Cafeteria, Juan Peralta, saw a man wearing a camouflage shirt walking very slowly and peering inside the business with an angry look on his face. He watched this man pass by the cafeteria's walk-up window heading in the direction of the shopping center's side alley. Approximately five to ten minutes later, Mr. Hernandez, the surviving victim, staggered into the cafeteria bleeding, muttering

2

unintelligibly, and pointing to the alleyway.   Mr. Peralta told a coworker to call 911 and followed Mr. Hernandez outside, at which point, Mr. Hernandez told him, "behind, behind."  Believing that Mr. Hernandez was referring to the back of the shopping center, Mr. Peralta checked that area but did not see anything.  However, as Mr. Peralta was walking back to the front of the cafeteria, he saw the man wearing the camouflage shirt, who he later identified as the defendant, leaving the alleyway.

Mr. Peralta realized that when Mr. Hernandez said "behind, behind," he was referring to the alley, not the back of shopping center.  Mr. Peralta went to the alley and found the second victim, Mr. Castillo-Moreno, lying on the ground.  At this time, Mr. Castillo-Moreno, who had also been stabbed, was still alive, but he later died.

Detective Segovia interviewed Mr. Peralta on the evening of the stabbing. Mr. Peralta told Detective Segovia that he saw a man wearing a camouflage T-shirt "fleeing" from the alley where the stabbings occurred, and that he would be able to identify the man wearing the camouflage shirt. Almost two months later, Detective Segovia presented Mr. Peralta with a photographic lineup consisting of six men. Mr. Peralta pointed to the defendant's photograph, stating that the photograph "looks just like the guy" he saw wearing the camouflage shirt, but he would feel more comfortable making a positive identification if he could see the man in the

photograph in person. Thereafter, Detective Sabel, the lead detective investigating the stabbings, obtained a search warrant compelling the defendant to appear at a live lineup. During the live lineup, Mr. Peralta identified the defendant as the person he saw wearing the camouflage T-shirt. Thereafter, the defendant was arrested and after being read his Miranda[1] rights, he gave a videotaped statement to the police, in which he admitted that he had stabbed the two victims. Following the evidentiary hearing, the trial court denied the defendant's motion to suppress.

At trial, in addition to presenting the jury with the defendant's videotaped statement, the State played two DVDs of the perpetuated testimony of Maria Ruiz, a waitress at Lili's Cafeteria. Over objection, the trial court permitted the State to play the portion of her testimony where Ms. Ruiz testified that when she was outside with Mr. Hernandez after he had been stabbed, she saw a man wearing a camouflage shirt exiting the alley where a number of dumpsters are located. While Mr. Hernandez was looking in the direction of these dumpsters, he pointed at the man in the camouflage shirt and said, "That's him."

The defendant's defense at trial was that he was not present when these crimes were committed. In support of his defense, the defendant presented alibi witnesses who claimed that the defendant was with them at the time of the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

stabbings, and therefore, he was misidentified as being the man in the camouflage shirt seen at

Lili's Cafeteria both prior to and after the stabbings. The defendant additionally asserted that the law enforcement officers coerced him to provide the videotaped statement by threatening him with the removal of his daughter by the Department of Children and Families, and he claimed that the officers told him exactly what to say in the videotaped statement.

The jury found the defendant guilty of the second degree murder of Mr. Castillo-Moreno and the attempted second degree murder of Mr. Hernandez. He was later sentenced, and the defendant's appeal followed.

The defendant contends on appeal that the trial court erred by denying his motion to suppress his videotaped statement because "mere presence" at Lili's Cafeteria does not provide the requisite probable cause for his arrest. We disagree. The defendant's mere presence at Lili's Cafeteria was not the basis for his arrest. He was not only seen in the vicinity of the cafeteria, but was also seen exiting the alleyway where the second victim was found after the first victim, Mr. Hernandez, told Mr. Peralta "behind, behind." Further, when the defendant was seen leaving the alley, he was "not walking normally," he was walking "hurriedly" or "fleeing." We therefore conclude that there was probable cause to arrest the defendant.

"Probable cause for arrest exists where an officer has reasonable grounds to believe that the suspect has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction." Chavez v. State, 832 So. 2d 730, 747 (Fla. 2002) (quoting Walker v. State, 707 So. 2d 300, 312 (Fla. 1997)) (internal quotation and citation omitted); see State v. Cortez, 705 So. 2d 676, 678 (Fla. 3d DCA 1998) (quoting State v. Russell, 659 So. 2d 465, 468 (Fla. 3d DCA 1995)) ("Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it.").

In the instant case, the evidence adduced at the suppression hearing indicates that the defendant was much more than merely present at Lili's Cafeteria at the time of the stabbings. Rather, the evidence showed that the defendant was actually seen leaving the crime scene—the alley—shortly before one of the stab victims was discovered. Further, the evidence also demonstrated that when the defendant was leaving the alley, he was either "not walking normally" or was fleeing. Based on this evidence, we find that probable cause existed to arrest the defendant.

6

Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress his videotaped statement.

Next, the defendant contends that the trial court erred by admitting the portion of Ms. Ruiz's perpetuated testimony in which she testified that Mr. Hernandez pointed at the man wearing the camouflage shirt and said, "That's him." Section 90.803(1), Florida Statutes (2014), defines a "spontaneous statement" as "[a] spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness." The statement made by Mr. Hernandez clearly qualifies as a "spontaneous statement" because he made the statement—"That's him"—as he was perceiving and pointing at the man in the camouflage shirt. Further, the statement was not made under circumstances that indicate its lack of trustworthiness. We therefore conclude that the trial court did not abuse its discretion by admitting the portion of Ms. Ruiz's perpetuated testimony where she testified that she saw Mr.

Hernandez point at the defendant and say "That's him."

Lastly, the defendant claims that the trial court fundamentally erred by denying his motion for a judgment of acquittal at the close of the State's case-in-chief where the State introduced his videotaped statement, which established a

prima facie case of self-defense, which the State failed to disprove beyond a reasonable doubt. We disagree because the defendant's defense at trial was misidentification, not self-defense, and in support of his defense, the defendant presented the testimony of alibi witnesses to establish that he was not present when the crimes were committed and asserted that the law enforcement officers had coerced him into falsely stating that he had stabbed the victims in self-defense. Therefore, this argument is without merit.

Accordingly, we affirm the defendant's convictions and sentences for second degree murder and attempted second degree murder.

Affirmed.