**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Norbert William McLAUGHLIN,
Defendant-Appellant.**

**No. 77–5701.**

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1978.

Joseph S. Chagra, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., Rebecca Westfall, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before GEE, FAY and VANCE, Circuit Judges.

GEE, Circuit Judge:

The search of McLaughlin's automobile yielded over 200 pounds of marijuana, which led to his conviction of conspiracy to possess contraband with intent to distribute and of possession with intent to distribute.[1] McLaughlin argues on appeal that the search was unconstitutional because conducted without a warrant and that the government produced insufficient evidence at trial to support his conspiracy conviction. We affirm.

On the night of October 22, 1974, Border Patrol Agent Hammons was conducting a roving patrol in an area known as C. C. Bills Crossing, situated near the Rio Grande River and only one-half mile from the Fabens port of entry, where earlier that same evening a vehicle had run the international bridge in order to escape inspection. Hammons had been told of this incident by other agents, and the vehicle had been described to him as a green 1967 Dodge. As Agent Hammons proceeded from the direction of the border toward Bills Crossing, where he intended to conduct a "still watch" of the area, he passed an old, abandoned cotton gin and observed there a "dark-colored vehicle"[2] parked under the shed adjoining the gin. Thinking this might be the car that had earlier run the border crossing, Hammons decided that the best way to investigate was to proceed with his still watch.

Hammons positioned himself between the cotton gin and the Island Mercantile, a general store with an attached residence, owned by Enrique Garcia and located one

---

1. The judge acquitted McLaughlin on account of conspiracy to import marijuana.

2. At one point in his testimony at the suppression hearing below, Hammons related his observation that the vehicle parked at the gin was green in color and had the outlines of a Dodge or a Plymouth but admitted that he had not been "absolutely sure what the vehicle make was." The description quoted in text comes from Hammons' cross-examination testimony at trial, when he replied that he could only determine that the car was a "dark-colored vehicle."

and one-fourth miles from the river. Near midnight Hammons saw two vehicles leave the Mercantile: one headed toward the town of Fabens while the other, a Dodge Dart, drove to the abandoned gin and parked next to the car already there. The dome light of one car enabled Hammons to see shadows of people moving back and forth between the vehicles, but the agent could not tell what was happening. Within ten minutes the Dart drove back towards the store and Hammons followed in his unmarked van without turning on his headlights. As the car approached a stop sign, Hammons switched on his lights and signalled the driver to stop with a hand-held red light. Rather than stopping, however, the driver ran the sign, went through the intersection, made a left turn into the private driveway at the general store, and parked under a carport. Hammons pursued the car into the driveway, stopping his van three-quarters of the way through the entrance gate.

The driver of the Dart, later shown to have been McLaughlin, got out of his car and met Hammons halfway between the vehicles. As he did so, Hammons saw a passenger leave the front seat and run around the back of the store; Hammons also noted a shape that resembled a head protruding over the back seat of the car. Identifying himself as an immigration officer, Hammons asked McLaughlin what his citizenship was and whether the car belonged to him. Appellant responded that he was a United States citizen and that the car was owned by his wife. Hammons next asked for permission to search the car, but McLaughlin refused, stating that the car was on private property and that Hammons needed a warrant. This prompted Hammons to walk back to his van, where he called sector headquarters for advice. After completing his call, Hammons saw McLaughlin run around the front of the store, and at this point the agent decided to approach the car. When Hammons reached the right rear of the vehicle, he smelled marijuana and, upon shining his flashlight into the the back seat, saw several large black plastic bags. He opened the right

rear door and peered in, noting that the odor of marijuana grew stronger as he did so. Hammons then returned to his van and contacted local customs officials.

While the customs officers were in route, another Border Patrol agent went to the abandoned cotton gin and determined that the car parked there, a green Plymouth, was the one that had earlier run the bridge. Found in the trunk of that car was a coffee can harboring a small amount of marijuana; in the car's interior rested a prescription issued to McLaughlin. When the customs officials reached the Island Mercantile, they opened the trunk of the Dodge with its keys, which were found still in the ignition. Inside the trunk were several other large plastic bags. Each of the bags contained marijuana, in all 239 pounds. The officers also found inside the Dodge a speeding ticket issued to appellant.

### I. Automobile Search.

■ McLaughlin first argues that Agent Hammons lacked reasonable suspicion to stop him on his return to the Island Mercantile store. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). We find it unnecessary to reach that issue since McLaughlin, in fact, did not pull over in response to Hammons' hand-held light but instead ran the stop sign and turned into the driveway. The material question is, instead, whether reasonable suspicion existed when Hammons approached the car in the driveway, and we think it clearly did. After all, by that time the agent had observed several curious events: the midnight rendezvous near the border at the abandoned cotton gin; McLaughlin's evasive behavior in running the stop sign and in meeting Hammons between the two vehicles; and the flight of both McLaughlin and his passenger. These events, taken together with the earlier incident at Fabens bridge, at least rise to the level of reasonable suspicion. For this reason, Hammons was entitled to approach the car in order to determine whether there were any other passengers inside and, if so, to question those passen-

gers about their citizenship. *See United States v. Brignoni-Ponce,* 422 U.S. at 881–82, 95 S.Ct. 2574. By this we do not mean that Hammons could have searched the vehicle for any false compartments or gained entry to the trunk but merely that he could make a quick check of the front and back seats. Such a brief investigation was reasonable, and thus constitutionally allowable, especially since Hammons thought he had seen several persons moving between the cars at the cotton gin and since, during his conversation with McLaughlin, he saw what looked like a head sticking up in the back seat.

 As to the subsequent search of the car, probable cause clearly existed because by then Agent Hammons had detected the odor of marijuana coming from the car before any search was made. *See United States v. DeWitt,* 569 F.2d 1338, 1339 (5th Cir. 1978); *United States v. Villarreal,* 565 F.2d 932, 937 (5th Cir. 1978); *United States v. Garza,* 544 F.2d 222, 225 (5th Cir. 1976). The remaining question is whether customs officials violated the fourth amendment in searching the vehicle without first obtaining a warrant. We think that they did not for two reasons. First is the exigent circumstance that McLaughlin and his passenger might have returned to remove or destroy the contraband. *See Coolidge v. New Hampshire,* 403 U.S. 443, 462, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Any officers standing watch over the car while a warrant was being obtained would have been particularly vulnerable given the time of night and the suspects' ability to use the Garcia house as cover. Even if these circumstances were not sufficiently exigent, however, we would still uphold the search on the strength of the Supreme Court's language in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In that case the Court observed that it had previously sanctioned warrantless auto searches in the absence of any exigencies created by the mobility or vulnerability of the searched vehicle. 97 S.Ct. at 2484. *Accord Cady v.*

*Dombrowski,* 413 U.S. 433, 441–42, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The justification for those searches was, instead, "the diminished expectation of privacy which surrounds the automobile." *United States v. Chadwick,* 97 S.Ct. at 2484. As the Court noted, automobiles seldom serve as repositories of personal effects; they travel public thoroughfares where both occupants and contents are in plain view and are themselves subject to extensive government regulation. 97 S.Ct. at 2484. *Accord South Dakota v. Opperman,* 428 U.S. at 367–68, 96 S.Ct. 3092.

We take the Court's analysis in *Chadwick* to mean that warrantless searches are the general rule. This much seems clear since in that case the Court justified its holding, that luggage is immune from warrantless searches absent exigent circumstances, by distinguishing the privacy interest in luggage and similar items from that in automobiles.[3] Of course, it still may not be true that "in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords," *Chambers v. Maroney,* 399 U.S. at 50, 90 S.Ct. at 1981, but we find nothing exceptional about the search in this case. Although McLaughlin's car was parked at a private residence, which might in some instances give rise to a greater expectation of privacy, *see Collidge v. New Hampshire,* 403 U.S. at 460, it had not been parked there long prior to its search, and the residence did not even belong to the driver or owner of the car. Moreover, McLaughlin was obviously seeking refuge when he ran the stop sign and pulled in the private drive; and we decline to fashion a legal rule that automobile drivers are safe if they can make the

---

**3.** By contrast, in *Coolidge v. New Hampshire,* which greatly emphasized the need for exigent circumstances in warrantless auto searches, the Court stated that if cars could be searched without warrants and in the absence of exigent circumstances, so could luggage. 403 U.S. at 461 n. 18, 91 S.Ct. 2022.

sanctuary of the nearest private driveway or carport.

For all of the above reasons, we hold that the automobile search in this case satisfied the fourth amendment's requirement of reasonableness.

## II. Sufficiency of the Evidence.

■ McLaughlin disputes the sufficiency of the evidence to prove that he conspired to possess marijuana with intent to distribute. In deciding this claim, we must consider the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and to affirm we need only find that reasonable minds could have found the evidence inconsistent with every hypothesis of the accused's innocence, *United States v. Ragano*, 520 F.2d 1191, 1203 n. 16 (5th Cir. 1975), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976). To sustain the conspiracy conviction, the proof may be circumstantial, but it must convince beyond a reasonable doubt that a conspiracy existed between knowing partners. *United States v. Duckett,* 550 F.2d 1027, 1030 (5th Cir. 1977); *Causey v. United States,* 352 F.2d 203, 207 (5th Cir. 1965).

Of course, the mere presence of a passenger in McLaughlin's car is not sufficient to prove the existence of a co-conspirator. *United States v. Palacios,* 556 F.2d 1359, 1365 (5th Cir. 1977); *United States v. Duckett,* 550 F.2d at 1030; *United States v. Sanchez,* 508 F.2d 388, 393 (5th Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975). In this case, however, there is the additional evidence of the passenger's

flight, which constitutes circumstantial evidence tending to show his complicity, *see United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir. 1977); *United States v. Bowers,* 458 F.2d 1045, 1048 (5th Cir.), *cert. denied,* 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972), coupled with the stronger evidence of Hammons' testimony that more than one person moved back and forth between the vehicles[4] and that the plastic bags seized exuded a decidedly detectible odor of marijuana. On the basis of this evidence the jury could have concluded beyond a reasonable doubt that the unidentified passenger[5] knowingly assisted McLaughlin in moving the bags of marijuana from one car to the other and thus conspired with him to possess the contraband with intent to distribute.[6] *See United States v. James,* 510 F.2d 546, 552 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *United Sates v. Yaniz-Cremata,* 503 F.2d 963, 964 (5th Cir. 1974); *United States v. Lopez-Ortiz,* 492 F.2d 109, 115 (5th Cir. 1974).

Accordingly, McLaughlin's convictions are AFFIRMED.

---

4. In response to the question of how many people he saw, Officer Hammons responded, "I could only tell that either a few people were moving frequently between the automobiles or that—that a number of people were transferring. That's all I could tell." Although on cross-examination Hammons admitted not knowing how many people he saw moving between the cars, his testimony was always that he saw shadows of people, rather than shadows of a person, moving between the vehicles.

5. The government's failure to identify the passenger has no significance as far as the suffi-

ciency of the evidence to convict McLaughlin is concerned. *See United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir. 1974).

6. The passenger's overt act in helping to transfer the contraband is relevant only as evidence of a criminal agreement. Conspiracy statutes under which McLaughlin was prosecuted, 21 U.S.C. § 846 and § 963, do not require proof of any overt acts. *See United States v. Pringle,* 576 F.2d 1114, at 1120 (5th Cir. 1978); *United States v. Thomas,* 567 F.2d 638, 641 (5th Cir. 1978).