**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kevin Barry BUSH, Defendant-Appellant.**

No. 79–5725
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1980.

---

* Fed.R.App.P. 34(a);  5th Cir. R. 18.

Andrew A. Graham, Melbourne, Fla., for defendant-appellant.

Sonia O'Donnell, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

The appellant, Kevin Barry Bush, was charged in a one-count indictment with possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1) (1976). Following an adverse ruling on a motion to suppress the cocaine seized at the time of his arrest, Bush consented to a trial before the court and was found guilty. He appeals his con-viction, questioning only the district court's ruling on his motion to suppress.

The motion was referred to the magistrate. The magistrate conducted an evidentiary hearing, made extensive findings, and recommended that the district court deny the motion. Record at 183. The findings and recommendation were adopted by the district court. *Id.* at 312.

The findings of the district court pertinent to the suppression motion are well supported by the record. At 11:00 a. m. on May 29, 1979, Bush entered the Brunswick Lauderdale Lanes bowling alley in Ft. Lauderdale, Florida. Brenda Spect, the program director, saw Bush walk slowly up and down the concourse, look in various directions, and act in such a manner as to arouse her suspicions. Bush then approached the main desk, where Ms. Spect was on duty, and inquired about renting a locker. She informed Bush that the lockers rented for six-month periods at a fee of $5 and showed him locker 62, which was empty. Bush decided to rent that locker, filled out an application, and paid the rental fee. When Spect gave him the key to locker 62, Bush inquired whether the management had master keys to the lockers, and she replied that they did. He then left the bowling alley.

Bush returned a few minutes later. Spect noticed that he had a Gold Triangle paper bag, rolled up, stuck under his arm. She watched him proceed to locker 62, open it, place the bag into the locker, close the locker, and leave the bowling alley. Spect's suspicions were further aroused, so she asked the bowling alley mechanic, Qualey, to open the locker. Qualey did so, removed the Gold Triangle bag and took it to the office where he examined its contends, a package containing a white powdery substance he thought was cocaine. Qualey rewrapped the package, placed it in the bag and returned it to locker 62.

Ms. Spect then telephoned her supervisor, Thomas Tibbet, who contacted the federal Drug Enforcement Administration (DEA), relating the foregoing information. DEA ran a computer check on Bush, learned that

he was a narcotics suspect, and promptly initiated procedures to obtain a search warrant. Meanwhile, DEA Agents McCutcheon, Foley and Dial went to the bowling alley and interviewed Spect and Qualey.

A surveillance was immediately begun by the agents. Shortly thereafter, Ms. Spect told them that she saw a Cordova drive by the bowling alley and that Bush appeared to be the driver. Moments later, Bush entered the bowling alley and walked up and down the concourse. Bush then played the pinball machine. At the same time, he kept looking around and went in and out of the men's room several times; he appeared to the agents to be very nervous. Bush finally sat down in a chair across from locker 62. In a few moments, he removed the Gold Triangle bag from the locker and started to leave the bowling alley. As Bush reached the front door, Agent McCutcheon approached him identified himself as a law enforcement officer, and said, "You are . . . ." Before McCutcheon could finish his sentence, Bush threw the bag to the ground and took off, running. Agents McCutcheon and Dial pursued Bush and apprehended him a short distance away as Bush was climbing over a fence. Agent Foley, meanwhile, retrieved the bag Bush had discarded, and, examining its contents, concluded that it contained cocaine. Bush was promptly advised of his *Miranda* rights, searched, and taken to the agents' vehicle.

Bush contends that the cocaine should have been suppressed for two reasons: (1) the DEA agents lacked probable cause to effect a warrantless arrest and, thus, the cocaine was tainted evidence; and (2) even if the arrest was lawful, the warrantless search, made in the absence of exigent circumstances, was contrary to the teachings of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

■ Bush's attack on the trial court's finding of probable cause is directed to the source of the agents' information about his activities, not to the facial sufficiency *vel non* of that information. He argues that what the bowling alley employees said to the agents cannot be considered by us in determining whether probable cause was present because the reliability of those employees and the information they communicated to the agents was not known. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The test formulated by *Aguilar* and *Spinelli* is inapplicable, however. As we observed in *United States v. Campbell*, 575 F.2d 505, 507 (5th Cir. 1978) (per curiam):

> Contentions that the informant in this case did not meet the previously reliable and trustworthy test under *Aguilar-Spinelli* are without merit. Although Rubrecht [FBI agent] had never had dealings with Cole [identified, non-professional informant] before upon which to base reliability, the informant was not confidential, was unpaid, and his detailed information led the FBI to the point where the FBI could make their own observations of the defendants. This informant is so similar to the one in *United States v. Darensbourg*, 520 F.2d 985 (5th Cir. 1975) that we are bound by its holding that an informant is not intrinsically unreliable just because he has not proven reliable in the past. Detailed information obtained from a non-professional informant witness, when thereafter confirmed by an officer's personal observations, may support an inference that the informant is reliable.

(Footnote omitted.) The observations of the DEA agents at the bowling alley, made subsequent to their questioning of Spect and Qualey and in the light of the DEA computer disclosure about Bush, gave the agents probable cause to effect Bush's arrest. If the agents did not have enough on these facts to take Bush into custody, they did a moment later when Bush suddenly began to flee. *United States v. Agostino*, 608 F.2d 1035, 1038 (5th Cir. 1979). There is no question that the agents had authority to make the arrest without a warrant. *United States v. Blair*, 366 F.Supp. 1036, 1038–1039 (S.D.N.Y.1973).

The magistrate, and the district court, found that Bush, as the DEA agents closed in, "voluntarily hurled the package [of cocaine] to the ground and abandoned it." Record at 96. The record supports this finding; it is not clearly erroneous. We therefore conclude, as did the court below, that Bush had no legitimate expectation of privacy, *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in the paper bag or its contents and the agents were not required to obtain a search warrant.

The motion to suppress was properly denied; therefore, the conviction is

AFFIRMED.