**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Dr. Mike Mehdi FOOLADI,**
**Defendant-Appellee.**

**No. 82–1524**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 21, 1983.

Rehearing Denied May 20, 1983.

Sidney Powell, James E. Bock, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellant.

Gary Hill, El Paso, Tex., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district judge suppressed evidence obtained during a search of the defendant's residence because he concluded that the search warrant was based on an affidavit that failed to establish probable cause. Because in our judgment the magistrate properly ruled that the affidavit established probable cause, we reverse and remand for further proceedings.

The "Affidavit for Search Warrant" was executed by John T. Pool, a special agent of the Drug Enforcement Administration (DEA), and it recounts the following facts: In August 1981, a representative of a New Jersey glass manufacturer communicated with Agent Pool. The representative indicated that the firm had recently shipped glassware and laboratory equipment to a "Fooladi Enterprises" in El Paso, Texas. When one of the firm's salesmen tried to call on Fooladi Enterprises, however, he discovered a personal residence at the address instead of the commercial building he expected.

In May 1982, a Dr. E.H. Williams ordered 25 pounds of sodium acetate anhydrous from a San Antonio, Texas company. The chemical was shipped by Greyhound Bus to Laredo. It was picked up by Williams, who placed a new shipping label on the package and sent it to Dr. Mike Fooladi in El Paso, Texas. A confidential informant advised the DEA that Williams had a reputation for supplying illegal drugs to the horse racing industry.

Fooladi picked up the sodium acetate anhydrous on June 1, 1982, and took it to his

residence. The following day, Agent Pool returned to the Fooladi residence with another DEA agent. From a distance of 100 yards, they smelled a strong odor originating at the Fooladi house. They recognized the odor as similar to that present at other locations where amphetamines or methamphetamines were being manufactured. Pool "believe[d] ... it [was] the odor of phenyl acetic acid."

The agents moved closer to the residence. They saw a prefabricated-type building located in the Fooladi back yard. The odor seemed to come from this structure. Dr. Fooladi was observed leaving the building wearing a pair of surgical gloves. He held his hands away from his body as if there was something on them.

DEA chemists advised Pool that sodium acetate anhydrous, the chemical shipped to Fooladi from San Antonio, is a common chemical. It has many legitimate uses, but is also an essential element in the manufacture of phenyl-2-propanone, an immediate precursor to amphetamines and methamphetamines. The chemists indicated that it could easily be purchased from several chemical supply companies in El Paso. They also told Pool that most laboratories working legitimately with phenyl acetic acid, the chemical Pool smelled at the Fooladi residence, would have a filtration system to prevent the discharge of odorous fumes.

Finally, Agent Pool discovered that Dr. Fooladi had listed his employment as "Med School Juarez" in an application for credit with an El Paso company. However, United States Customs computers indicated that, in the preceding month, Fooladi had crossed the border on only two occasions.

Based on this information, a United States Magistrate issued a warrant to search Fooladi's residence. The search was conducted, and Fooladi was subsequently indicted for manufacture and attempted manufacture of controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846 (1976). Fooladi filed a pretrial motion to suppress

the evidence seized during the search of his residence. The district court granted the motion, and the government brought this appeal.[1]

## I

Fooladi's brief states that the "Affidavit for Search Warrant" was not sworn to or attested. The full affidavit was not contained in the record originally forwarded to us by the district court. Because the fourth amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. Const. amend. IV, we remanded the case so the full affidavit could be included in the record. As supplemented, the record contains an "Affidavit for Search Warrant" sworn by John T. Pool of the DEA before Janet Ruesch, a United States Magistrate. Attached to the affidavit, and incorporated therein by reference, is a four-page rider. Fooladi's claim that the affidavit on which the warrant issued was unsworn is contradicted by the record.

## II

The government argues that the district court erred in refusing to consider the information furnished to Pool by the representative of the glass manufacturing company and by the confidential informant who advised that Dr. Williams had a poor reputation. The district court discounted this information because the affidavit failed to indicate why Pool concluded the information he received from these sources was reliable. *See Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 728 (1964); *Spinelli v. United States*, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 641 (1969).

The district judge erred in discounting the information supplied by the glass manufacturing company. We have often noted that "*Aguilar* and *Spinelli* requirements are limited to the informant situation only." *United States v. Bell*, 457 F.2d

1. 18 U.S.C. § 3731 (1976) permits the United States to appeal "from a decision or order of a

district court suppressing or excluding evidence...."

1231, 1239 (5th Cir.1972); *accord United States v. Darensbourg,* 520 F.2d 985, 989 (5th Cir.1975). Thus, "[d]etailed information obtained from a non-professional informant witness, when thereafter confirmed by an officer's personal observations, may support an inference that the informant is reliable." *United States v. Bush,* 623 F.2d 388, 390 (5th Cir.1980) (per curiam); *United States v. Campbell,* 575 F.2d 505, 507 (5th Cir.1978) (per curiam).

■ The exact scope of the "non-professional-informant" exception to the rule of *Aguilar* and *Spinelli* is as yet unclear in this Circuit. *See United States v. Flynn,* 664 F.2d 1296, 1302–03 (5th Cir.), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). Nevertheless, we think the information from the glass manufacturer fell within the exception. The information came from a disinterested business person. Agent Pool was able to verify personally that the location of "Fooladi Enterprises" was a residence. The fact that Fooladi received a large quantity of chemicals and Pool's observations at the residence confirmed that Fooladi was working with chemicals, thus corroborating the fact that he would need glassware and equipment.

■ The non-professional informant cases often stress the fact that the information came from an identified source. *See Darensbourg,* 520 F.2d at 989; *Bell,* 457 F.2d at 1238. Although the name of the glass company's representative was not disclosed in the affidavit, the name of the company, Kontes Glass Manufacturing Company, was disclosed. At least when the information is furnished on behalf of a company by one of its employees, as in this case, disclosure of the company name is sufficient. Because the information came from a non-professional informant, was detailed, and was corroborated by the personal observations and investigations of the police, we hold that the reliability prong of *Aguilar* and *Spinelli* was satisfied. *See Bush,* 623 F.2d at 390; *Campbell,* 575 F.2d at 507; *Darensbourg,* 520 F.2d at 989; *Bell,* 457 F.2d at 1239. "[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." 1 W. LaFave, Search & Seizure, § 3.4(a), at 592 (1978).

■ Our conclusion is different with respect to the information regarding Dr. Williams' reputation. The affidavit states that a DEA agent "inquired with a confidential informant of his who is also a practicing veterinarian," and received this information. The affidavit thus does not establish that the informant was a "non-professional" within the meaning of the rule discussed above. *Aguilar* and *Spinelli,* therefore, required the affidavit to set forth the reasons for concluding that this informant was credible. It did not do so. For this reason, the district court properly discounted the information furnished by this informant.

### III

■ "[P]robable cause exists whenever the facts and circumstances known to the officer, and of which he has reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Head,* 693 F.2d 353, 357 (5th Cir.1982); *accord Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949); *United States v. Shaw,* 701 F.2d 367, 377 (5th Cir.1983); *United States v. Sanchez,* 689 F.2d 508, 512 (5th Cir.1982). In reviewing the district court's conclusion that the affidavit did not establish probable cause, "our review is not limited to the 'clearly erroneous' standard, and we instead may make an independent review of the sufficiency of the affidavit." *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir.1982); *United States v. Minis,* 666 F.2d 134, 138 (5th Cir.), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *United States v. Pulvano,* 629 F.2d 1151, 1156–57 & n. 7 (5th Cir.1980).

■ The magistrate's determination that probable cause was shown by the affidavit, however, is entitled to great deference.

See *United States v. Smith,* 686 F.2d 234, 238 n. 3 (5th Cir.1982); *Freeman,* 685 F.2d at 948; *Doescher v. Estelle,* 666 F.2d 285, 289 (5th Cir.1982); *United States v. Flynn,* 664 F.2d 1296, 1304 (5th Cir.), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982). Her determination that probable cause existed should be sustained in "doubtful or marginal cases." *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684, 687 (1965); *accord Freeman,* 685 F.2d at 948; *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977).

■ In evaluating the showing of probable cause, we are mindful that the question is one of "factual and practical considerations on which reasonable and prudent men, not legal technicians, act." *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890; *Head,* 693 F.2d at 357. The affidavit is to be tested by a much less rigorous standard than evidence adduced at trial. *Flynn,* 664 F.2d at 1304. And we do not consider each individual item of information separately; we evaluate the "laminated total" of available facts. *See Shaw,* 701 F.2d at 376; *Doescher,* 666 F.2d at 289; *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).

■ Applying these principles to the affidavit in the present case, we conclude that it established probable cause. Fooladi obtained glassware and equipment that might be used to manufacture amphetamines. Although sodium acetate anhydrous was available locally, he obtained the chemical from San Antonio. He arranged not to have it shipped directly to him; instead he had it sent to Dr. Williams who received it in Laredo and forwarded it to El Paso. The agents smelled phenyl acetic acid emanating from a building on Fooladi's property. This odor is produced during the manufacture of phenyl-2-propanone. *Cf. United States v. Michel,* 588 F.2d 986, 998 (5th Cir.) (smell of marijuana established probable cause for search of vehicle), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979); *United States v. McLaughlin,* 578 F.2d 1180, 1182 (5th Cir.1978) (same); *United States v. Park,* 531 F.2d 754, 758–59 (5th Cir.1976) (smell of ether, used in production

of a controlled substance, supported probable cause to search residence). Fooladi was seen leaving the building holding his gloved hands away from his body as if a chemical were on them. The DEA chemists observed that a legitimate laboratory would not produce the fumes the agents smelled. Finally, the magistrate could consider the fact that Fooladi apparently misrepresented his occupation.

Many of these facts, considered in isolation, are quite innocent. A citizen may purchase glassware and laboratory equipment for perfectly legitimate purposes. He may buy chemicals for legitimate purposes. He may even have products routed in a roundabout fashion innocently. However, we consider the evidence as a whole, and "[v]iewing the evidence in this manner it may truly be said that the total may be a sum greater than its parts." *Flynn,* 664 F.2d at 1304; *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). We conclude that there was probable cause to issue the warrant.

For these reasons, the district court's ruling on the suppression motion is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.