Michael J. BRADLEY, Plaintiff,

v.

VILLAGE OF GREENWOOD LAKE; Amie Thonus, individually and in her official capacity as a Greenwood Lake Police Officer; Brian Block, individually and in his official capacity as a Greenwood Lake Police Officer; Mi-chael Dunlop, individually and in his official capacity as a Greenwood Lake Police Officer; Detective John Hansen, individually and in his official capacity as a Greenwood Lake Police Detective, Defendants.

No. 04CV973CMGAY.

United States District Court, S.D. New York.

July 13, 2005.

John Cobb, Cobb & Cobb, Tuxedo, NY, for Michael Bradley.

Edward Patrick McConville, Rodney C. Powis, Maney, McConville & Liccardi, P.C., East Greenbush, NY, for Village of Greenwood Lane, Police Office Amie Thonus, C.O. Block.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, Judge.

This is a civil rights case arising out of an arrest that took place on September 8, 2003. Plaintiff brought this action pursuant to 42 U.S.C. § 1983. He seeks damages for false arrest, false imprisonment, malicious prosecution, excessive force, unlawful search and seizure of his person and belongings, and violation of his right to bodily privacy. The first five claims arise under the Fourth Amendment to the United States Constitution and the last claim arises under the Fourteenth Amendment.

For the reasons set forth below, the Court holds that Defendants are entitled to summary judgment dismissing all claims.

### BACKGROUND

Except where noted, the following facts are undisputed. Where there is a dispute of facts, I adopt Plaintiff's version for purposes of this motion.

At approximately 7:00 p.m. on September 8, 2003, Plaintiff Michael Bradley walked towards a CVS drugstore in the Village of Greenwood Lake with a new acquaintance, Scott Macleay. Unbeknownst to Mr. Bradley, Mr. Macleay had telephoned the Greenwood Lake Police Department thirty minutes earlier and told Officer Amie Thonus that Mr. Bradley was in possession of two bundles of heroin, which he was determined to sell imminently to finance a trip back to New York City. Officer Thonus arranged for Detective John Hansen to contact Mr. Macleay, who then told Detective Hansen that he saw Mr. Bradley try to sell the heroin to neighborhood children without success. The children allegedly told Mr. Macleay about the incident when they sought his assistance. During the phone call with Detec-

tive Hansen, Mr. Macleay agreed to be in the vicinity of the CVS with Mr. Bradley at approximately 7:00 p.m. so that Detective Hansen and the Defendant police officers could apprehend Mr. Bradley.

As Messrs. Bradley and Macleay approached the CVS parking lot, Mr. Bradley noticed a uniformed female police officer sitting in a nearby car. "That's the police," Mr. Bradley commented. Mr. Bradley claims that shortly thereafter, four men emerged from two unmarked vehicles with guns in hand. Mr. Bradley claims that none of the men was dressed in police uniform or identified himself as a police officer.[1]

Mr. Bradley then ran into the wooded area behind the CVS,[2] hopped over a fence, and hid behind a tree to catch his breath for approximately five to seven minutes. By this time, four officers were in close pursuit of Mr. Bradley, including the female officer he had seen minutes earlier near the CVS parking lot. The female officer identified herself as Officer Thonus and said she and the three men with her were "the Greenwood Lake Police Department," and were "sending in the dogs." At this time, Mr. Bradley walked along the fence to an opening where he could cross and surrender to the officers. Mr. Bradley claims that Officer Dunlop then kicked him in the stomach, threw him to the ground, and said, "You're lucky I didn't shoot your black ass," as he applied handcuffs. The officers maintain that Mr. Bradley resisted arrest by "struggling, flailing, squirming on the ground, and re-

fusing to comply with the[ir] instructions." (Thonus Aff. ¶ 23 and Dunlop Aff. ¶ 29.)

Mr. Bradley was then taken to the Village of Greenwood Lake Police Department for processing, at which time he claims he was subjected to a strip search. Defendants deny that the arrest processing included a strip search. (Block Aff. ¶¶ 22, 23.)

Prior to his arrest, Mr. Bradley had consumed pizza and Southern Comfort, and upon being taken into custody complained of stomach pains. The police called an ambulance to take Mr. Bradley to the hospital, and he vomited in his cell as the medics arrived at approximately 8:30 p.m. At the hospital, Mr. Bradley was examined by a nurse and a doctor, who applied an alcohol swab to the "superficial abrasion" on his abdomen that resulted from Officer Dunlop's kick to the stomach. The medical examination included an X-ray of Mr. Bradley's stomach, which he claims he did not "request." (Pl.'s L.R. 56.1 Statement, ¶ 18.) Mr. Bradley was released at approximately 10:30 p.m., taken back to the police station, and given Pepto–Bismol by police.

The police failed to recover any drugs at the scene of the arrest or on Mr. Bradley's person. He was charged with resisting arrest and obstructing governmental administration and was arraigned on the following day, September 9, 2003. Mr. Bradley was committed to Orange County Jail after failing to post bail and was released on or about September 24, 2003. On Octo-

---

1. Defendants contend that only two officers, Officers Brian Block and Michael Dunlop, converged on Mr. Bradley, and that Officer Block emerged from a marked Village of Greenwood Lake Police SUV. Defendants claim that Officer Block was in uniform and Officer Dunlop was in civilian clothes, with his police shield displayed on his belt. Defendants maintain they identified themselves as police officers and asked Plaintiff to place his

hands on the marked SUV (Defs.' Opp'n to Pl.'s L.R. 56.1 Statement ¶¶ 10, 15.) As discussed below, this factual dispute is immaterial.

2. The Officers claim Mr. Bradley ran with his left hand in his left pocket and his right hand holding up his pants, giving the appearance that he was attempting to guard or discard drugs or weapons. (Dunlop Aff. ¶ 21.)

ber 27, 2003, the charges were dismissed based on the insufficiency of the accusatory instruments.

This action was filed on January 28, 2004, against the four officers involved in Mr. Bradley's arrest, as well as the Village of Greenwood Lake as the supervisory body responsible for their conduct. Mr. Bradley's excessive force claim was later withdrawn against all officers, except for Officer Dunlop. All Defendants have moved for summary judgment under Fed. R.Civ.P. 56(c).[3]

DISCUSSION

1. *Standard for Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted if there is no genuine issue of material fact as to Plaintiff's claim. In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d. Cir.1989). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. *Qualified Immunity*

Qualified immunity shields a public official from civil liability when his conduct does not violate a clearly established statutory or constitutional right. Whether an official is entitled to qualified immunity requires a two-part analysis. The threshold question is whether, "Taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity motions are decided by assuming the plaintiff's version of the facts to be true, not by allowing defendants to testify as to their version of what happened. *Stephenson v. Doe*, 332 F.3d 68 (2d Cir.2003). If the Court determines that the officer's conduct as alleged by Plaintiff did not violate a constitutional right, the analysis ends. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. If the alleged conduct does infringe on a constitutional right, the Court must determine "whether the right was clearly established" at the time it was allegedly infringed. *Id.; see also McLaurin v. New Rochelle Police Officers*, 373 F.Supp.2d 385, 387 (S.D.N.Y. 2005).

3. *False arrest and false imprisonment*

Plaintiff's § 1983 claims for false arrest and false imprisonment stem from an individual's right to be free from arrest without probable cause; a broad right clearly established at the time of Plaintiff's arrest. *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997) (citing *Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir.1994)). The existence of probable cause, or arguable probable

---

**3.** The parties in this case confused who was to submit the Local Rule 56.1 Statement to the Court and who was to respond with a 56.1 Statement in Opposition, so Plaintiff's allegations of disputed facts were difficult to identify. Plaintiff's Local Rule 56.1 Statement fails

to mention central facts to his claims such as Officer Dunlop's kick to his stomach and the alleged strip search, and Defendant's Opposition to Plaintiff's Statement fails to dispute them.

cause, gives government officials an absolute defense to such claims and affords the arresting officers qualified immunity from litigation. *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002)(citing *Weyant v.Okst,* 101 F.3d 845, 852 (2d Cir.1996)). The arguable probable cause analysis requires that, at the very least, "officers of reasonable competence could disagree on whether the probable cause test was met." *Caldarola,* 298 F.3d at 168 (quoting *Wachtler v. County of Herkimer,* 35 F.3d 77, 80 (2d Cir.1994) (quotation marks omitted)). In *Saucier,* 533 U.S. at 206, 200, 121 S.Ct. 2151, the United States Supreme Court held that "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause ... and in those situations courts will not hold that they have violated the Constitution." The *Saucier* Court also noted that *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "grant[s] officers [qualified] immunity for reasonable mistakes as to the legality of their actions."

In their motion for summary judgment, Defendants rely on the two-pronged approach of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to prove they had probable cause to arrest Mr. Bradley. This approach focuses on the reliability or veracity of the informant, and the basis for the informant's knowledge. *Morgan v. Superintendent,* 88 F.Supp.2d 312, 317 (S.D.N.Y.2000). Defendants argue that, prior to this incident, Mr. Macleay had provided officers with reliable information relating to controlled substances, thereby attesting to his reliability and veracity, and that his phone call to police regarding Mr. Bradley was specific and based on his own observations, thereby justifying the basis of his knowledge.

Defendants need not have engaged in such complicated analysis. In *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir.1975), the court held that "[w]e have previously recognized that the language in *Aguilar* and *Spinelli* was addressed to the problem of professional informers," rather than identified citizen informants. (citation omitted). In *Caldarola,* reversing this Court's *Aguilar–Spinelli* analysis, the Second Circuit emphasized that, "Under New York law an identified citizen informant is presumed to be reliable." 298 F.3d at 165 (citing *People v. Hetrick,* 80 N.Y.2d 344, 349, 590 N.Y.S.2d 183, 185, 604 N.E.2d 732, 734 (1992)("[B]ecause [the informant] was an identified citizen informant, and not an unnamed informant, there was a 'built-in' basis for crediting her reliability")). The *Caldarola* court also referenced Fifth and Seventh Circuit decisions in which courts held that "when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." *Id.* (quoting *United States v. Fooladi,* 703 F.2d, 180, 183 (5th Cir.1983)(internal quotation marks omitted)); *see also Edwards v. Cabrera,* 58 F.3d 290, 294 (7th Cir.1995).

Arguing against Mr. Macleay's reliability, Plaintiff urges the Court to consider Mr. Macleay's nine arrests in Greenwood Lake for driving under the influence of alcohol, and argues that Mr. Macleay simply sought to curry favor with local law enforcement officials. Plaintiff argues that Defendants should have conducted an independent investigation to corroborate Mr. Macleay's tip before acting on it.

In *Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), however, the United States Supreme Court reasoned that "even if we entertain some doubt as to an informant's motives,

his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." Based on *Gates, Caldarola, Hetrick,* and *Fooladi,* the officers were justified in, at the very least, approaching Mr. Bradley on Mr. Macleay's tip alone.

Mr. Bradley's flight upon the officers' approach further justified their belief that they had probable cause to arrest him. Mr. Bradley claims he did not know the men chasing him were officers until Defendant Thonus identified herself in the woods. However, in *Sibron v. State of New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Court stated that:

> [D]eliberately furtive actions and flight at the approach of *strangers or law officers* are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. (emphasis added)

Thus, the factual dispute over whether Mr. Bradley knew Defendants were officers is immaterial to the determination that Defendants had probable or arguable probable cause to arrest him when he fled in a suspicious manner at their approach. Furthermore, Defendants were entitled to rely on the determination of Detective Hansen in approaching Mr. Bradley and could not be expected to question his judgment about whether an arrest was valid. *See Loria v. Gorman,* 306 F.3d 1271, 1288 (2d Cir.2002); *Caldarola,* 298 F.3d at 166–67.

Accordingly, I hold that reasonable officers would likely have found probable cause to arrest Plaintiff in this instance, and, at most, could potentially disagree. Even though no drugs were found on Mr.

Bradley's person or at the scene of his arrest, Defendants are entitled to qualified immunity regarding his claims for false arrest and false imprisonment.

### 4. Malicious prosecution

■ Plaintiff's claim for malicious prosecution alleges that Defendants pursued a criminal proceeding against him for resisting arrest and obstructing governmental administration on false charges. Plaintiff argues that because he was found not guilty by insufficiency of the accusatory instruments, Defendants had no probable cause to pursue the charges against him and that they did so maliciously. I disagree.

■ To state a claim under New York law for malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). As I stated in *Mack v. Town of Wallkill,* 253 F.Supp.2d 552, 562 (S.D.N.Y.2003), "information dismissed on procedural grounds, namely that facts alleged by the People were not legally sufficient to support the charge, did not terminate favorably to [defendant] and as such, [defendant] failed to state cause of action for malicious prosecution." In this case, the proceeding against Plaintiff for resisting arrest and obstructing governmental administration was not terminated in his favor because, as in *Mack,* the charges were dismissed due to insufficiency of the accusatory instruments.

Additionally, Plaintiff has not pleaded or alleged any facts that the proceeding was instituted without probable cause or maliciously. As this Court has stated, "there

must be a showing of some deliberate act punctuated with awareness of 'conscious falsity' to establish malice." *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 423 (S.D.N.Y.2002). No such allegations have been made in this case. Defendants are entitled to qualified immunity regarding Plaintiff's claim for malicious prosecution.

### 5. Excessive force

Plaintiff's excessive force claim centers around Officer Dunlop's kick to his stomach upon his arrest, which resulted in a scratch on Plaintiff's abdomen. In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, the Supreme Court held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard." The Court reasoned that, "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and that, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865 (citation omitted). The Court continued, "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and should take into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers of others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865.

■ In *Saucier,* the Court reasoned that the "same analysis [regarding qualified immunity] is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable." 533 U.S. at 200, 121 S.Ct. 2151. Thus, even if Officer Dunlop was mistaken in perceiving that he needed to kick Plaintiff in order to subdue him, the Officer's mistake was reasonable given the undisputed facts leading up to Plaintiff's arrest. Plaintiff ran from police officers into a wooded area, hid from the officers for five to seven minutes, and only emerged from the woods when the police threatened to send in dogs. It is clear why Officer Dunlop might have believed he needed to act forcefully to restrain Plaintiff.[4]

The claim of excessive force against Officer Dunlop is therefore dismissed.

### 6. Search and seizure of person and belongings and right to bodily privacy

■ Finally, Plaintiff claims that he was subjected to an unlawful strip search upon his arrival at the police station in violation of his Fourth Amendment rights. All Defendants and officers on the scene deny that a strip search occurred, but assuming *arguendo* that it did, Plaintiff suffered no deprivation of his constitutional rights.

■ The Fourth Amendment standard for a strip search is "individualized reasonable suspicion." *Shain v. Ellison,* 273 F.3d 56, 59 (2d Cir.2001). Factors influ-

---

4. Plaintiff's injuries—temporary nausea (which he attributed in part to the food and drink he had consumed prior to his arrest) and an abdominal scratch—are so de minimis as to be inconsistent with a claim of excessive force.

encing whether officers have individualized reasonable suspicion to strip search a suspect include: "reasonable suspicion that the [arrestee] was carrying contraband, . . . the nature of the crime charged, the circumstances of the arrest, and the particular characteristics of the arrestee." *Dodge v. County of Orange*, 226 F.R.D. 177, 180 (S.D.N.Y.2005).

Plaintiff came to the attention of police after an informant's tip that he possessed heroin, which he had attempted to sell to minors and sought to sell imminently. When the officers approached, Plaintiff fled into a wooded area, forcing them to give chase. Plaintiff hid and was out of the officers' sight for approximately five to seven minutes, during which time he could easily have discarded, swallowed, or otherwise hidden the alleged heroin, or any weapons in his possession. When officers found no weapons or drugs on Plaintiff, or at the scene of his arrest, it would have been logical for them to conduct a strip search. *See United States v. Asbury*, 586 F.2d 973, 976–77 (2d Cir.1978)(stating that factors leading to reasonable suspicion justifying a strip search include "defendant's excessive nervousness, unusual conduct, [or] an informant's tip").

Plaintiff also claims he was subjected to an X-ray of his abdomen at the hospital, which he did not "request," and which violated his right to bodily privacy under the Fourteenth Amendment.[5] Although neither party addressed this issue in their briefs to the Court, I have located in the record that Plaintiff signed the hospital's "Authorization for Emergency Medical Treatment." (Defs.' Ex. G). This form renders the point moot since Plaintiff consented to the "invasion" of his person.

Thus, Plaintiff has failed to state allegations that would support his claims of ei-

ther an unlawful search and seizure, or a violation of his right to bodily privacy.

All claims against the individual Defendants are dismissed.

### 7. *Plaintiff's claims against the Village of Greenwood Lake*

■ Plaintiff argues that the Village of Greenwood Lake should be held liable for the misinformation and lack of training that led to the officers' actions. Because the officers acted reasonably, with probable or arguable probable cause, and caused Plaintiff to suffer no constitutional deprivations, there is no basis for asserting any claim against the Village. *Perlleshi v. Westchester*, No. 98 Civ. 6927(CM) 2000 WL 554294 (S.D.N.Y. April 24, 2000).

■ Although it is not necessary to reach the question, I note that Plaintiff fails to present any evidence that the Village had a policy, custom, pattern or practice of using excessive force. Under § 1983, a municipality cannot be held liable solely on a theory of *respondeat superior* liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiff must show that the municipal policy was the "moving force [behind] the constitutional violation." *Id.* at 389, 109 S.Ct. 1197 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018 and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the ab-

---

**5.** Plaintiff failed to discuss this claim in his brief to the Court, so I have liberally interpreted Plaintiff's argument based on the Com-

plaint and Pl.'s L.R. 56.1 Statement, the only documents in which its occurrence is discussed.

sence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (1995)(quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)); *see also McLaurin,* at 399 (stating that a "claim against a municipality requires, as a predicate, an allegation of a constitutional violation against some individual actor").

Even if Plaintiff's other claims had merit, which they do not, he has presented no evidence addressing municipal policy or custom in support of his claim against the Village. Therefore, the claims against the Village of Greenwood Lake are dismissed.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The case is dismissed as to all Defendants. The Clerk of the Court is directed to close the file.

This constitutes the decision and order of this Court.